**CITY NATIONAL BANK OF MIAMI, as Trustee of Lloyd Moriber and Joan Jones Webb, Lloyd Moriber, and Joan Jones Webb, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–249L.

United States Court of Federal Claims.

April 7, 1995.

Ira W. Berman, New York City, for plaintiffs. Thomas C. Murray, Jr., Berman & Murray, of counsel.

Fred R. Disheroon, Washington, DC, with whom was Asst. Atty. Gen. Lois J. Schiffer, for defendant. William A. Baxter, U.S. Army Corps of Engineers, of counsel.

## ORDER

MILLER, Judge.

Before the court after argument is plaintiff's[1] motion *in limine.* The issue is whether a landowner seeking damages for a taking of his property must take into account existing state and county regulatory restrictions concerning limerock mining when valuing the property prior to the date on which the United States Army Corps of Engineers denied a permit necessary to develop the property for mining.

## FACTS

The following undisputed facts replicate some of the background set forth in the earlier order issued in this case, *City National Bank v. United States,* 30 Fed.Cl. 715 (1994), denying defendant's motion for summary judgment on the basis of statute of limitations and ripeness. Dr. Lloyd A. Moriber ("plaintiff")[2] owns a 75–percent interest in a 1,247 acre tract of land in Dade County, Florida, adjacent to the Florida Everglades. Plaintiff acquired the property on December 29, 1972, with the intention of mining limerock.

1. *See infra* note 2.

2. As explained in *City National Bank,* 30 Fed.Cl. at 716 n. 1, the court will refer to Dr. Moriber as a singular "plaintiff."

3. The joint permit application represents an effort by the two permitting authorities ostensibly

On February 20, 1976, the Dade County Building and Zoning Department notified plaintiff that the Board of County Commissioners had approved his request for an unusual use permit for lake excavation. Shortly thereafter, plaintiff's excavating firm began mining operations on the property. These activities ceased when plaintiff received a letter dated December 2, 1977, from the United States Army Corps of Engineers (the "Corps") notifying plaintiff that the activities being conducted on-site involved the filling of wetlands and that such activities could proceed only after plaintiff obtained a section 404 permit pursuant to the Clean Water Act, 33 U.S.C. § 1344 (1988) (the "CWA").

Plaintiff then submitted a joint permit application to the Florida Department of Environmental Regulation (the "Florida DER") and the Corps on February 7, 1979.[3] The Florida DER denied the application on September 22, 1980, because plaintiff failed to provide adequate assurances that the proposed project would not violate state water quality standards. Plaintiff appealed this decision, but subsequently agreed to a voluntary dismissal based on the belief that it was best to postpone pursuing the regulatory requirements until such time as the courts resolved *Florida Rock Indus., Inc. v. United States,* 8 Cl.Ct. 160 (1985), *aff'd in part and vacated in part,* 791 F.2d 893 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987), *on remand,* 21 Cl.Ct. 161 (1990), *vacated,* 18 F.3d 1560 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), a case involving the Corps' denial of a CWA section 404 permit for a parcel of land adjacent to plaintiff's property.[4]

While plaintiff awaited the outcome of *Florida Rock,* many changes occurred in the state and local regulatory scheme. For example, in 1988 the Dade County Board of

to reduce the paperwork burden for the applicant. It does not mean that the state and federal permitting programs are unified.

4. Florida Rock filed suit in the United States Claims Court shortly after the Corps denied its permit application on October 2, 1980.

County Commissioners adopted a new Comprehensive Development Master Plan (the "Comprehensive Plan") pursuant to the requirements of chapter 163 of the Florida Statutes.[5] Under the Comprehensive Plan, plaintiff's property falls within Environmental Protection Subarea B, the Dade–Broward Levee Basin. "The Environmental Protection designation applies to those areas in the County most environmentally significant, most susceptible to environmental degradation and where such degradation would adversely affect the supply of potable fresh water or environmental systems of County, regional, State or national importance...." Metropolitan Dade County Planning Department, *Comprehensive Development Master Plan for Metropolitan Dade County, Florida* I–29–30 (1994 rev.). The Comprehensive Plan, in general, did not include limerock mining as a permitted use. Other regulatory changes included the Dade County Class IV permit requirement, established in 1983, for projects involving the dredging or filling of wetlands.

On or about January 14, 1991, plaintiff filed a second joint permit application with the Florida DER and the Corps. On March 8, 1993, the Corps denied the permit without prejudice.[6] Thereafter, on June 4, 1993, the Florida DER denied plaintiff's application for failure to submit required information. Although plaintiff applied to both the Florida DER and the Corps, the record reflects that plaintiff did not seek other state and county approvals for conducting limerock mining on the subject property. Specifically, the record indicates that plaintiff did not attempt to comply with the 1988 Comprehensive Plan and that plaintiff failed to apply for either the Class IV permit or the surface water

management permit, which, as of 1991, was issued by the South Florida Water Management District. The record further indicates that the unusual use zoning permit that plaintiff previously had acquired expired on June 13, 1988, prior to the effective date of the 1988 Comprehensive Plan.

Plaintiff filed a complaint in the United States Court of Federal Claims on April 26, 1993, seeking just compensation for the alleged taking caused by the Corps' permit denial. On January 3, 1994, defendant filed a motion for summary judgment, arguing that plaintiff's claim was barred by the statute of limitations, or alternatively, was not ripe. Defendant further argued that plaintiff's takings claim must be limited to 190 acres. The order in *City National Bank*, 30 Fed.Cl. 715, denying defendant's motion held: 1) The relevant accrual date for purposes of the statute of limitations was the Corps' March 8, 1993 denial of plaintiff's second permit application, as opposed to the Corps' denial of adjacent landowner Florida Rock's permit application in 1980; 2) the Corps' March 8, 1993 denial letter represented a final agency action, rendering the claim ripe for review; and 3) the record was unclear as to the exact amount of acreage covered by plaintiff's takings claim, making summary judgment inappropriate.

On January 11, 1995, plaintiff filed a motion *in limine*, arguing that defendant should be precluded from presenting evidence as to existing state and county regulations concerning limerock mining for purposes of valuing the property pre-taking. Defendant opposed and again moved for summary judgment, arguing that plaintiff lacked a compensable property interest in limerock mining, or alternatively, that the Corps' permit denial

---

5. According to the deposition of Jean Evoy, currently Chief of Freshwater Wetlands Section, Dade County Environmental Resources Management Department, and formerly Principal Environmental Planner for the Dade County Planning Department, the Comprehensive Plan adopted in 1975 was in effect at both the time plaintiff applied for and obtained the unusual use permit allowing lake excavation. In comparing the 1975 and 1988 versions of the Comprehensive Plan, Ms. Evoy stated that "it was not inconsistent with th[e] earlier version for an unusual use [permit] to have been approved by the Board of County Commissioners." Deposition of Jean

Evoy, Dec. 19, 1994, at 13. Ms. Evoy explained that the requirements embodied in the 1975 Comprehensive Plan "were much broader" than those contained in the 1988 Comprehensive Plan, which became effective on December 16, 1988, and which responded to the more stringent and comprehensive planning requirements of both chapter 163 of the Florida Statutes and the Florida Administrative Code, as amended. Evoy Dep. at 12.

6. In its answer defendant admits that the application was denied. Answer filed July 28, 1993, ¶ 9 (admitting contents of ¶ 20).

had no effect on the value of the property because, prior to the date of denial, state and local regulatory restrictions precluded lime-rock mining on plaintiff's property. The court thereafter instructed plaintiff to reply only to the opposition to the motion *in limine*. The court also deferred briefing concerning defendant's motion following decision on plaintiff's motion.

## DISCUSSION

### 1. *Ripeness*

During argument defendant voiced its disagreement with the court's prior ruling that the denial of the second permit application on March 8, 1993, constituted a final agency action, rendering the claim ripe for review. *See City Nat'l Bank v. United States,* 30 Fed.Cl. 715, 719–20 (1994). Arguing that the ripeness doctrine precludes the court from exercising jurisdiction, because "the Corps ... did not make any ruling on the merits of th[e] case....", Transcript of Proceedings, *City Nat'l Bank v. United States,* No. 93–249L, at 15 (Fed.Cl. Mar. 1, 1995) (hereinafter "Tr."), defendant maintains that the Corps denied the permit solely because plaintiff's application was incomplete.

To support its "incomplete application" theory, defendant emphasized that the Corps' denial was designated "without prejudice," signifying that plaintiff could submit the required information at a later date. Defendant further explains that the application was deficient in that it did not include 1) sufficient information concerning the sequential criteria of avoidance, minimization, and mitigation of the section 404(b)(1) guidelines, 40 C.F.R. §§ 230.1–230.80 (1994) (the "sec-

tion 404(b)(1) guidelines"); [7] or 2) the state certifications required pursuant to CWA § 401(a) and the Coastal Zone Management Act § 307(c)(3)(A), 16 U.S.C. § 1456(c)(3)(A) (1988) (the "CZMA"); *see* 33 C.F.R. § 325.2(b) (1994). Defendant also reiterated that plaintiff had not obtained required state and local permits, such as the surface water management or Class IV permits.

In light of defendant's persistence concerning the ripeness issue, the court has reviewed its treatment of the matter in the March 17, 1994 order, 30 Fed.Cl. at 719–20. Further examination of the issue does not yield a contrary result, and the court therefore again holds that the Corps made a merits-based determination that plaintiff's proposed activity did not comply with the section 404(b)(1) guidelines.[8] *See* 30 Fed.Cl. at 720. The court, however, seeks to clarify the issue because the following language of the previous order was not adequate to the task:

> The fact that the application was denied without prejudice does not affect the finality of the decision. *Plaintiff was allowed the option to refile because his application did not contain required state certifications. Since the absence of state certifications did not form the basis of the denial, however, another application containing these certifications would not have changed the basis of the Corps' decision.*

30 Fed.Cl. at 720 (emphasis added) (footnote omitted).

Although the underscored language is correct in that the Corps' decision to deny plaintiff's application did not hinge on the omitted state certifications, the language does not accurately reflect the scope of the "without

---

**7.** The Corps' March 8, 1993 denial letter refers to the criteria of avoidance, minimization, and mitigation as both "the sequential criteria" and "the successive criteria" of the section 404(b)(1) guidelines. For purposes of consistency, the court will refer to these criteria as "sequential criteria."

**8.** The court also reaffirms its holding that the failure to obtain required state certifications and other state and local permits did not form the basis of the Corps' permit denial. 30 Fed.Cl. at 720; *see Florida Rock Indus., Inc. v. United States,* 21 Cl.Ct. 161, 170 (1990) (holding claim ripe even though landowner had not applied for

certain state permits), *vacated on other grounds,* 18 F.3d 1560 (Fed.Cir.1994), *cert denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Ciampetti v. United States,* 18 Cl.Ct. 548, 554 (1989) (holding that Corps would have denied permit regardless of whether landowners had obtained required state certifications or permits); *see also* 33 C.F.R. §§ 325.2(b)(1)(ii), (2)(ii) (prohibiting only the issuance, not denial, of permits when Corps has not received required state certifications); 33 C.F.R. § 320.4(j) (stating that Corps proceeds with processing of application concurrently with other federal, state, and local authorities).

prejudice" designation contained in the March 8, 1993 denial letter, which states:

Based on the evaluation of all pertinent facts in the file, we have determined that the project, as proposed, may not be the least environmentally damaging practicable alternative. *For this reason, the permit is hereby denied without prejudice.* The file is hereby declared inactive and will be retained for two years. *Within that period, should you choose to more fully address the successive [or sequential] criteria noted above,* the Department of the Army will reconsider your application.

(Emphasis added.)

This passage suggests that, contrary to the court's earlier order, the designation "without prejudice" was not limited to allowing plaintiff to refile an application once the appropriate state certifications had been obtained, but also afforded plaintiff the opportunity to file additional information concerning the sequential criteria specified in the section 404(b)(1) guidelines. The issue therefore is whether the designation "without prejudice" allowing the submission of additional information concerning the sequential criteria affects the finality of the Corps' denial.

■ Defendant suggests that the court establish a rule of law that whenever the Corps denies a permit "without prejudice," the denial does not indicate a final agency decision and therefore is not ripe for judicial review. Creation of such a rule would transfer ripeness determinations from the courts to the Corps, which could lead to agency abuse. The term "without prejudice" by itself cannot automatically render a claim not ripe for judicial review. In performing its ripeness evaluation, the court may review the record and determine whether the matter constitutes a final agency action, notwithstanding the designation "without prejudice." *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) (discussing materials to be evaluated when examining subject matter jurisdiction).

Over two years after the submission of plaintiff's application, the Corps concluded in the first substantive paragraph of its March 8, 1993 denial letter:

To issue a Department of the Army permit, a proposed project must be shown to be the least environmentally damaging practicable alternative. Our guide for evaluating this is contained in the 404(b)(1) guidelines. These guidelines require thorough analysis of the sequential criteria of avoidance, minimization, and mitigation of wetlands impacts. *These criteria have not been satisfied.* The project as proposed would result in the elimination of 655 acres of wetlands in an area which is a nationally significant resource. Avoidance may be practicable because the cost of purchasing alternate property presented in your letter of September 4, 1991, does not appear to be prohibitive and no evidence that alternate locations were considered has been provided. Alternate designs which could minimize impacts to at least some of the higher quality wetlands may be viable but no investigation was presented.... The proposed mitigation is not enough to compensate for the loss of the wetlands....

(Emphasis added.)

■ A plain reading of this paragraph indicates that the Corps made a merits-based determination, based on the record, that plaintiff's proposed project did not satisfy the sequential criteria set forth in the section 404(b)(1) guidelines. The Corps explicitly stated that "the sequential criteria of avoidance, minimization, and mitigation.... have not been satisfied...." The Corps found that plaintiff had not rebutted the presumption that practicable alternatives existed for the proposed project,[9] or addressed possible minimization, or provided an adequate mitigation plan to account for the potential impacts from the proposed mining.

Contrary to defendant's suggestion, this is not a case of the applicant's refusing to submit required information and thereby disabl-

---

9. 40 C.F.R. § 230.10(a)(3) (1994), provides that for non-water dependent wetlands, such as plaintiff's site, "practicable alternatives ... are presumed to be available, unless clearly demonstrat-

ed otherwise...." The Corps determined that plaintiff did not sufficiently rebut this presumption.

ing the Corps from completing its evaluative process. Plaintiff responded to the Corps' information requests, including its request regarding the sequential criteria. For example, on March 5, 1992, plaintiff sent the Corps a letter requesting that an inter-agency meeting be arranged to discuss exactly what information was required pursuant to the Corps' most recent information request of February 28, 1992. In that request the Corps sought, among other things, information concerning the sequential criteria of the section 404(b)(1) guidelines. At the May 28, 1992 meeting, the Corps accepted plaintiff's proposal that submission of the Environmental Assessment and Habitat Evaluation Program analysis (the "HEP report") would satisfy all outstanding information requests, including the information requested regarding the sequential criteria. The Corps also informed plaintiff that a final decision would be rendered after evaluation of the HEP report. *See* Complaint filed Apr. 26, 1993, ¶ 16 (alleging that the Corps "advised Plaintiff[ ] that upon … submission of an Environmental Assessment and Habitat Evaluation …, a final determination of the Second Joint Application would issue").

On August 11, 1992, plaintiff delivered the HEP report to the Corps, reiterating his understanding that the Corps, after reviewing the HEP, "would be in a position to issue the ·requested permit or, in the alternative, decline to issue the requested permit." *See* Biological Research Associates, *Environmental Assessment and Habitat Evaluation of a +/− 1,247–Acre Rock Mine Site in Dade County, Florida* 1 (Aug. 7, 1992) (noting that "[t]his report has been developed to fulfill the requests for additional information made by representatives of the ACOE [or Corps]…."). On August 14, 1992, the Corps forwarded the HEP report to EPA for review, stating: *"The Corps agreed that a HEP could provide enough additional information to facilitate a final decision on the proposed project…."* (Emphasis added.) *See* Compl. ¶ 18 ("Following submission of the HEP, Plaintiff[ ] … [was] re-assured by the Chief of the Regulatory Division of the Corps that, thereupon and in consideration of

information previously submitted, the Corps would either grant or deny the Second Joint Application.").

Thus, the record unmistakably demonstrates that plaintiff responded to the Corps' information requests and reached an agreement with the Corps that the HEP study would satisfy all outstanding informational requests, including the sequential criteria, thereby enabling the Corps to issue a final decision. Nonetheless, defendant maintains that the Corps, eight months after submission of the HEP report and two years after submission of plaintiff's application, did not render a final decision, because the denial was designated "without prejudice," and allowed plaintiff to submit additional information on the sequential criteria. The court cannot accept defendant's characterization, given the factual background of this case.

The record further indicates·that plaintiff did provide specific information addressing the sequential criteria. With regard to the first criterion, avoidance, plaintiff informed the Corps that he knew of no other comparable sites in the area that had an equivalent vein of limerock, but that if such sites existed, they would cost approximately $35,000.00 per acre. The Corps rejected this information as insufficient and determined that plaintiff had not rebutted the presumption of alternatives set forth in 40 C.F.R. § 230.10(a)(3) (1994). Courts do not require applicants to comply with every aspect of a permit process if the agency has taken a position on the application that would render further attempts to comply futile. For example, the court in *Bueré–Co. v. United States,* 16 Cl.Ct. 42, 51 (1988), another wetlands case, indicated that a claim may be ripe although the Corps rejected as insufficient economic data submitted by an applicant concerning alternatives.

The Corps also acknowledged in its Memorandum for Record,[10] prepared in conjunction with plaintiff's application, that "[u]pland sites with construction quality limestone are not available in the immediate vicinity of the proposed project…." *See* 33 C.F.R.

---

**10.** The defined subject of the Memorandum for Record was "Department of the Army Environ-

mental Assessment and Statement of Finding for the Above–Numbered Permit Application."

§ 325.2(a)(6) (stating that following public review and comment, district engineer will evaluate record and regulations and prepare statement of findings or record of decision for all permit decisions). Moreover, as the court noted in *Bueré-Co.*, assuming that alternatives existed, "the Corps could not authorize ... development and it would be futile for plaintiff to seek such authorization by making a reapplication to the Corps." 16 Cl.Ct. at 51; *see* 40 C.F.R. § 230.10(a) (stating that "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem....").

Finally, in an effort to satisfy the mitigation criterion, plaintiff provided a mitigation scheme, which the Corps also rejected as insufficient. Despite the Corps' conclusions regarding the insufficiency of plaintiff's submissions, the Corps offered no suggestions as to possible alternatives or mitigation techniques which might gain Corps' approval. *Formanek v. United States*, 18 Cl.Ct. 785, 793 (1989) ("*Formanek I*") (holding case ripe, noting that Corps suggested no mitigation alternatives and inferring that no practicable efforts could be taken to obtain Corps' approval); *Bueré-Co.*, 16 Cl.Ct. at 51 (holding case ripe even though applicant did not respond to Corps' request for additional mitigation proposals). In *Formanek I* "the court ... interpret[ed] ... plaintiffs' silence or lack of action on these issues as plaintiffs' assertion that any such alternatives would render the proposed development economically infeasible." 18 Cl.Ct. at 793. Thus, although the Corps allowed plaintiff to submit additional information concerning the sequential criteria by denying the application without prejudice, the agency nonetheless reached a final decision that plaintiff's proposed project did not comply with the section 404(b)(1) guidelines.

This conclusion is further supported by the type of evaluation performed by the Corps. In this case, over a two-year period, the Corps completed the required public notice and comment process, reviewed and summarized the comments received, and obtained responses from plaintiff concerning the comments received. *See* 33 C.F.R. § 325.2(d)(1) (stating that "[t]he public notice will be issued within 15 days of receipt of all information required to be submitted by the applicant...."); *cf.* 33 C.F.R. § 320.4(j) (indicating that Corps may deny permit without prejudice and not proceed with substantive merits-based review when required state authorization or certification is denied). The Corps also conducted the analysis required pursuant to the section 404(b)(1) guidelines, as evidenced by the Memorandum for Record prepared by the Corps in conjunction with plaintiff's application. The Memorandum concludes by stating "that the proposed discharge does not comply with the 404(b)(1) guidelines" and that issuance of the permit would be "contrary to the public interest."

In this case the Corps conducted a thorough review, sought and received information from the applicant, and after two years made a determination that the proposed fill did not comply with the section 404(b)(1) guidelines. Many cases may exemplify a denial without prejudice indicating that the agency has not made a final decision; this is not such a case. The designation "without prejudice" in the March 8, 1993 denial letter does not alter the finality of the Corps' decision.

### 2. *Valuation of property prior to Corps' permit denial on March 8, 1993*

The "test for regulatory takings requires ... [the court] to compare the value that has been taken from the property with the value that remains in the property...." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S.Ct. 1232, 1248, 94 L.Ed.2d 472 (1987); *see Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 905 (Fed.Cir.1986) (holding that trial court must compare "the fair market value before the alleged taking, to the fair market value after the alleged taking"); *Formanek v. United States*, 26 Cl.Ct. 332, 335 (1992) (*Formanek II*) (same); *cf. United States v. 50 Acres of Land*, 469 U.S. 24, 29, 105 S.Ct. 451, 454–55, 83 L.Ed.2d 376 (1984) (holding that just compensation is to be measured by fair market value of property at time of taking); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74, 93 S.Ct. 791,

794–95, 35 L.Ed.2d 1 (1973) (same); *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1580 (Fed.Cir.1990) (same). The issue posed by plaintiff's motion stems from this basic valuation precept.

Unlike the most recent celebrated valuation dispute which focused on post-taking value, *see Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1565–68 (Fed.Cir. 1994) (ruling trial court erred in determining post-taking value), *cert. denied*, —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), plaintiff's motion calls into question the elements to be considered in determining pre-taking value. Through its motion *in limine*, plaintiff seeks to exclude evidence of all state and county regulations concerning limerock mining in defining the pre-taking value of the subject property. Specifically, plaintiff seeks to exclude evidence of: 1) the dredge-and-fill-permit program administered by the Florida DER pursuant to chapter 403 of the Florida Statutes; 2) the surface water management permit program administered by the South Florida Water Management District pursuant to chapter 373 of the Florida Statutes; 3) the Dade County Class IV permit program administered by the Dade County Environmental Resources Management Department, pursuant to section 24–58 of the Dade County Environmental Protection Ordinance Coastal and Freshwater Wetlands Regulations; and 4) the Comprehensive Plan administered by the Dade County Planning Department, and required by chapter 163 of the Florida Statutes.[11]

Plaintiff argues that the Federal Government, through the CWA and the CZMA, dictates the content and application of these state and county regulatory measures, such that it would be a "manifest injustice" to allow defendant to introduce evidence concerning the effects of such requirements. Plf's Br. filed Jan. 11, 1995, at 45. Defendant rejoins that "neither the Clean Water Act [CWA] nor the CZMA in any manner compel the State to adopt state statutes or limit the State's ability to regulate its own

resources under its police power...." Def's Br. filed Jan. 30, 1995, at 19.

Plaintiff's motion raises several interesting and complex legal issues, such as the relationship, if any, between the state and federal environmental regulatory systems and, assuming such a relationship, the proper allocation of takings responsibility between the governmental actors. A more threshold issue, however, exists concerning the effect of the 1988 Comprehensive Plan on the pre-taking value of the subject property. The Comprehensive Plan is

> the official long-range and comprehensive guide for the orderly growth and development of Metropolitan Dade County, Florida, and is adopted to direct and achieve coordinated and harmonious development and land use in a manner which will permit the planning for adequate community facilities and protect the ecological balance of the environment, in order to promote the public health, safety, convenience, prosperity and general welfare of Dade County's citizens and visitors....

*Comprehensive Development Master Plan for Metropolitan Dade County, Florida* A–3. All zoning must comply with the use designations set forth in the Comprehensive Plan. *See* Deposition of Jean Evoy, Dec. 19, 1994, at 10. Moreover, an individual seeking to perform a proposed project must first demonstrate compliance with the Comprehensive Plan and then seek the requisite zoning changes or variances.

Although plaintiff contends that a nexus exists between the federal CWA and CZMA and Dade County's Comprehensive Plan, the court discerns no such relationship sufficient to impute liability resulting from the effects of the Comprehensive Plan to the Federal Government. The Comprehensive Plan is tantamount to a zoning scheme, which for years has been construed as uniquely within the province and competency of local governments. *See Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 125, 98 S.Ct. 2646, 2659–60, 57 L.Ed.2d 631 (1978); *Gorieb v. Fox*, 274 U.S. 603, 608, 47 S.Ct. 675, 677, 71

---

**11.** These citations refer to the chapters of the Florida Statutes in effect both at the time plaintiff submitted his second permit application and

for the period during which the Corps evaluated that application.

L.Ed. 1228 (1927); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386–87, 47 S.Ct. 114, 117–18, 71 L.Ed. 303 (1926); *cf. De–Tom Enters., Inc. v. United States,* 213 Ct.Cl. 362, 365, 552 F.2d 337, 339 (1977) (holding that zoning action by local county board constituted taking, as opposed to any action by Federal Government).

The court understands plaintiff's position that the federal and state governments should not be allowed to use each other's environmental regulations as a total takings defense, leaving a property owner whipsawed without a forum in which to seek relief guaranteed by the Constitution. *See Ciampetti v. United States,* 18 Cl.Ct. 548, 556 (1989) (stating that "the Constitution could not countenance a circumstance in which there was no fifth amendment remedy merely because two government entities acting jointly or severally caused a taking...."). However, the court cannot ignore the existence of a bedrock local planning tool, such as the Comprehensive Plan, in valuing the property pre-taking. *United States v. 320.0 Acres of Land, More or Less,* 605 F.2d 762, 818 (5th Cir.1979) (holding that just compensation must be determined in light of regulatory restrictions in place at time of taking); *United States v. Eden Memorial Park Ass'n,* 350 F.2d 933, 936 (9th Cir.1965) (ruling that "land taken must be valued as it exists at the time of taking and subject to the then applicable zoning regulations...."); *United States v. Meadow Brook Club,* 259 F.2d 41, 45 (2d Cir.) ("Thus, if existing zoning restrictions preclude a more profitable use, ordinarily such use should not be considered in the valuation...."), *cert. denied,* 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958); *Formanek II,* 26 Cl.Ct. at 337 (ruling Comprehensive Plan did not adversely affect landowners' proposed project and therefore did not affect landowners' proffered highest and best use for purposes of pre-taking valuation); *Bowles v. United States,* 23 Cl.Ct. 443, 446 (1991) (ruling that legal restrictions on property including local restrictions must be evaluated in determining pre-taking value).

The inquiry focuses narrowly on whether the Comprehensive Plan, in effect when plaintiff made his second application to the Corps, precluded plaintiff from engaging in limerock mining on the subject property. Because resolution of this issue alone may preclude plaintiff's takings claim, the court will hold in abeyance the ruling as to the other matters posed by plaintiff's motion *in limine,* such as the relationship between the federal CWA and CZMA and the relevant state and county environmental permitting programs. The court will require the parties to continue briefing on defendant's motion for summary judgment, but only with respect to the effect of the Comprehensive Plan on plaintiff's proposed use of the property.[12]

The 1988 Comprehensive Plan designates plaintiff's property as Environmental Protection Subarea B, the Dade–Broward Levee Basin. "The Environmental Protection designation applies to those areas in the County most environmentally significant, [and] most susceptible to environmental degrada-

---

12. During argument defendant outlined two arguments in support of its summary judgment motion. One argument was that the court must evaluate the pre-taking value based upon legal uses of the property at the time of taking. *See* Tr. at 19–22, 30–34. Defendant's remaining argument concerns whether plaintiff has an identifiable compensable property interest in limerock mining.

To determine whether plaintiff has a compensable property interest, the court must evaluate plaintiff's "bundle of rights" as of the time he acquired the property at issue, which in this case was 1972. *Lucas v. South Carolina Coastal Council,* — U.S. —, —, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798 (1992); *Preseault v. United States,* 27 Fed.Cl. 69, 87 (1992), *appeal docketed,* No. 93–5067 (Fed.Cir. Jan. 28, 1993). The court must also examine " 'existing rules or un- derstandings that stem from an independent source such as state law' ... [because such laws] define the range of interests that qualify for protection as 'property' under the Fifth (and Fourteenth) Amendments." *Lucas,* — U.S. at —, 112 S.Ct. at 2901 (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (citations omitted)). As of the date on which plaintiff acquired the property, the record does not indicate the existence of any federal, state, or county regulations that prohibited the proposed project. Although the CWA was in force at the time of purchase, the act did not then apply to wetlands. Because plaintiff held a compensable property interest on the relevant date, this issue should not be addressed further in the requested briefing.

tion...." *Comprehensive Development Master Plan for Metropolitan Dade County, Florida* I–29–30. The Plan provides that all lands designated under the rubric "Environmental Protection" will be evaluated on a case-by-case basis. The plan further provides a list of uses "that may be considered for approval." *Id.* I–30. For Environmental Protection Subarea B, these uses include: "rural residences at a maximum density of one dwelling unit per five acres, low coverage communications facilities, recreational facilities and necessary public facilities including water management facilities." *Id.* I–32.

Limerock mining does not constitute a use "that may be considered for approval" in Environmental Protection Subarea B, and is therefore inconsistent with the Comprehensive Plan. *See* Letter dated July 30, 1991, from Dade County Planning Department to Corps (stating "[l]imerock mining and associated filling of wetlands in th[e] area would be inconsistent with the CDMP [Comprehensive Development Master Plan]"); Evoy Dep. at 22, 26 (same). According to the deposition of Jean Evoy, currently Chief of Freshwater Wetlands Section, Dade County Environmental Resources Management Department, and formerly Principal Environmental Planner for the Dade County Planning Department, plaintiff may achieve compliance with the Comprehensive Plan by obtaining a "Master Plan amendment" or "Master Plan redesignation." Evoy Dep. at 11, 23. Once such amendment or redesignation is procured, plaintiff must then obtain an unusual use permit. Thus, although plaintiff, to date, has taken no steps to achieve consistency with the Comprehensive Plan, Ms. Evoy indicates that the Comprehensive Plan may not serve as a total prohibition with respect to plaintiff's proposed activity.

If plaintiff can demonstrate a reasonable probability that he would have obtained the required Master Plan amendment or redesignation, as well as the unusual use permit, thereby defeating defendant's motion for summary judgment, the court will rule on the remainder of the issues posed by plaintiff's motion *in limine*. *See Whitney Benefits, Inc. v. United States*, 926 F.2d 1169, 1178 (Fed.Cir.) (holding "that inclusion of value

elements dependent upon events requires that those events be 'fairly shown to be reasonably probable'...."), *cert. denied*, 502 U.S. 952, 112 S.Ct. 406, 116 L.Ed.2d 354 (1991) (quoting *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934)); *Formanek* II, 26 Cl.Ct. at 337 ("Notwithstanding the property's designation as a nature preservation area in the city's Comprehensive Plan, the court concludes that plaintiffs could have developed the property into a light industrial park in accordance with the city's zoning ordinance...."). If, however, defendant establishes either that the Comprehensive Plan flatly prohibits limerock mining, or that plaintiff would have failed in his efforts to obtain the required Master Plan amendment or redesignation and unusual use permit, plaintiff's takings claim must fail, because there would be no diminution in the value of the property as of the date of the alleged taking attributable to actions of the Federal Government.

### CONCLUSION

Accordingly, based on the foregoing, plaintiff's motion *in limine* is provisionally denied subject to reinstatement. Plaintiff's response to defendant's motion for summary judgment shall be limited consistent with the foregoing. A scheduling order has been entered separately.

IT IS SO ORDERED.