**CITY NATIONAL BANK OF MIAMI, as Trustee of Lloyd Moriber and Joan Jones Webb, Lloyd Moriber, and Joan Jones Webb, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–249L.

United States Court of Federal Claims.

March 17, 1994.

Ira W. Berman, New York City, for plaintiffs.

Fred R. Disheroon, Washington, DC, with whom was Acting Asst. Atty. Gen. Lois J. Schiffer, for defendant.

## ORDER

NETTESHEIM, Judge.

This matter, before the court on defendant's motion for summary judgment, calls into issue whether a takings claim is barred by the statute of limitations and whether it is ripe for adjudication. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. Dr. Lloyd A. Moriber ("plaintiff")[1] owns a 75-percent interest in a 1,247 acre tract of land ("the property") in Dade County, Florida, adjacent to the Florida Everglades. Plaintiff acquired title to the land on December 29, 1972, at a purchase price of $1,000,000.00. Plaintiff testified at deposition that he purchased the land as an investment, intending to mine the limestone deposits located on his property and eventually to develop the land after mining was completed. He knew from the presence of other mining operations surrounding the property that this type of mining had attractive economic potential. Through his attorneys plaintiff acquired a mining permit for the property from the Metropolitan Dade County Building & Zoning Department on February 20, 1976, allowing excavation of one 432-acre area.[2]

Shortly after the permit was issued, an excavating firm hired by plaintiff began mining the property. Mining activities halted when plaintiff received a letter dated December 2, 1977, from the United States Army Corps of Engineers (the "Corps"), informing plaintiff that he must obtain a permit from the Corps if more fill material was to be deposited on his property. Pursuant to section 301 of the Clean Water Act, 33 U.S.C. § 1311 (1988), the discharge of any pollutant, except in compliance with appropriate provisions of the Act, is unlawful. The Corps exercised authority over plaintiff's land pursuant to section 404 of the Act, 33 U.S.C. § 1344(a), which authorizes the Corps to issue permits "for the discharge of dredged or fill material into the navigable waters at specified disposal sites."

On February 7, 1979, plaintiff filed a joint permit application with the Florida Department of Environmental Regulation ("DER") and the Corps to fill 95 acres per year over two years. The Florida DER denied this application on September 22, 1980, explaining that plaintiff had failed to provide adequate assurances that the proposed filling would not violate state water quality standards. Plaintiff appealed this decision and ultimately voluntarily dismissed this appeal without prejudice on April 15, 1981. This dismissal was prompted by plaintiff's belief that it was best to postpone pursuing the regulatory requirements until *Florida Rock Industries,*

---

1. Dr. Moriber was the original purchaser of the land in question and at present owns a majority interest in the land. He entered into a trust agreement with City National Bank of Miami solely for purposes of facilitating alienability of the land. Permits relative to the land were to be issued to the bank, thus avoiding the need for future purchasers of Dr. Moriber's interest to reacquire permits in their names. Since the other named plaintiffs do not contest ownership or control of the land and Dr. Moriber was the primary actor throughout this dispute, in order to avoid confusion the court will refer only to Dr. Moriber as a singular "plaintiff."

2. Plaintiff testified that it is common for limestone to be excavated in deep pits covering many acres. The lakes that result once mining is complete are developed as waterfront residential property. According to plaintiff, "virtually all of Dade County" is developed in this way. Deposition of Dr. Lloyd A. Moriber, Nov. 12, 1993, at 44–46.

*Inc. v. United States,* 8 Cl.Ct. 160 (1985), *rev'd & remanded,* 791 F.2d 893 (Fed.Cir. 1986), *on remand,* 21 Cl.Ct. 161 (1990), *rev'd & remanded,* 18 F.3d 1560 (Fed.Cir.1994),[3] a case involving a section 404 permit for an adjacent parcel of land, was resolved.

After Florida Rock Industries, Inc. ("Florida Rock"), prevailed at the trial level for the second time, plaintiff contacted counsel for the Government to discuss the possibility of settlement. When plaintiff was informed that the Government was not interested in settlement, plaintiff resubmitted his application for a section 404 permit with the Corps and the Florida DER on January 28, 1991. The application again sought permission to fill "a surface area of a maximum of 95 acres per year for 2 years." Plaintiff's application was denied without prejudice on March 8, 1993.[4]

In explaining its denial of the permit in a letter dated March 8, 1993, the Corps informed plaintiff that "[b]ased on the evaluation of all pertinent facts in the file, we have determined that the project, as proposed, may not be the least environmentally damaging practicable alternative. For this reason, the permit is hereby denied without prejudice...." The letter also noted that (1) Metro–Dade Environmental Resources Management opposed issuance of the permit because the property was in environmental protection and wellfield protection areas; (2) plaintiff had failed to apply for a Surface Water Management permit; (3) the permit application to the Florida DER was incomplete; (4) water quality certification under section 401 of the Clean Water Act was incomplete; and (5) plaintiff had not complied with section 307(c) of the Coastal Zone Management Act. The Corps also mentioned that "[t]he data generated during the state authorization process would likely be significant in furthering our analysis of the impacts of your proposed project."

Although both parties agree that plaintiff did not obtain the permits discussed in the Corps' denial letter, it is unclear why plaintiff failed to do so. As plaintiff testified at deposition regarding the other permits required for the project: "It was my understanding ... that none of them [the state agencies] would grant it [the permits] and the Corps has the ultimate say; if they said yes, it was yes and if they said no, it was certainly no." Deposition of Dr. Lloyd A. Moriber, Nov. 12, 1993, at 97. According to plaintiff, the relevant state agencies "were all at the meetings we had with the Army Corps, they were represented throughout the meetings we had." *Id.* at 96. Plaintiff's complaint alleges:

> [A] meeting was convened on May 28, 1992 and the Corps, the Florida DER and all other concerned agencies then advised Plaintiffs that upon their submission of an Environmental Assessment and Habitat Evaluation (hereinafter, "HEP"), a final determination of the Second Joint Application would issue.

Compl. filed Apr. 26, 1993, ¶ 16. Plaintiff alleges that he caused the required report to be filed with the Corps and the Florida DER in August of 1992. Plaintiff further alleges:

> Following submission of the HEP, Plaintiffs were re-assured by the Chief of the Regulatory Division of the Corps that, thereupon and in consideration of information previously submitted, the Corps would either grant or deny the Second Joint Application.

*Id.* ¶ 18.

After the Corps denied the permit application, plaintiff filed a complaint with the United States Court of Federal Claims on April 26, 1993, claiming just compensation for the alleged taking of his property caused by the Corps' denial of the permit.

---

**3.** Florida Rock Industries, Inc. ("Florida Rock"), is a mining company that, like plaintiff, sought a section 404 permit to enable it to mine limestone on its property. After this permit was denied, Florida Rock filed suit in the United States Claims Court, alleging that the denial of its permit constituted a taking of its land. The case was decided in favor of plaintiff. After the decision was reversed and remanded, Florida Rock was awarded compensation for the taking of 98 acres of its land. This decision also was recently reversed and remanded.

**4.** In its answer defendant admits that the application was denied. Ans. filed Sept. 8, 1993, ¶ 9.

## DISCUSSION

### 1. *Summary judgment standard*

 A motion for summary judgment based on lack of jurisdiction is treated as a motion to dismiss under RCFC 12(b)(1). *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986). When evaluating a motion to dismiss for subject matter jurisdiction pursuant to RCFC 12(b)(1), the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). In *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988), the court stated: "In cases such as this in which a party has moved to dismiss for lack of jurisdiction, we must consider the facts alleged in the complaint to be correct. If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." (Citing *Scheuer v. Rhodes,* 416 U.S. at 236, 416 U.S. at 1686; additional citations omitted.) However, the burden is on a plaintiff to establish jurisdiction. *Reynolds,* 846 F.2d at 748 (citing cases).

 When reviewing a motion for summary judgment in a case asserting an unconstitutional taking, a court should avoid "precipitous grants of summary judgment" due to the "fact-intensive" nature of such claims. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983); *see also Whitney Benefits, Inc. v. United States,* 752 F.2d 1554, 1559–60 (Fed.Cir.1985); *Skaw v. United States,* 740 F.2d 932, 939 (Fed.Cir.1984).

### 2. *Statute of limitations*

 The statute of limitations is jurisdictional in the Court of Federal Claims. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957) (discussing this court's predecessor, the Court of Claims); *Hart v. United States,* 910 F.2d 815, 817–18 (Fed.Cir.1990); *see United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct.

2224, 2229, 90 L.Ed.2d 841 (1986). The rationale is that, in derogation of the sovereign's immunity, Congress conferred jurisdiction to entertain certain claims and that no others could be asserted against the Government, including time-barred claims. Accordingly, the statute of limitations must be strictly construed. *Kirby v. United States,* 201 Ct. Cl. 527, 539 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974).

28 U.S.C.A. § 2501 (West Supp.1993), provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Crucial to the analysis of the issue whether the statute of limitations bars plaintiff's claim, therefore, is the determination of the date on which plaintiff's claim first accrued. A claim does not accrue until "all events necessary to fix the liability of a defendant have occurred—when 'the plaintiff has a legal right to maintain his or her action.'" *Catawba Indian Tribe v. United States,* 982 F.2d 1564, 1570 (Fed.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993) (quoting *Corman, Limitation of Actions,* § 6.1, at 374 (1991)); *see MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986) (stating that the Court has uniformly insisted on determining "the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it.").

This court recently held that the Government's liability is fixed for takings purposes when a permit is denied by the Corps under 33 U.S.C. § 1344. Citing the Federal Circuit's decision in *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 801 (Fed.Cir.1993), this court reiterated that "[a]s a matter of law, the possibility of a permit precludes the order itself from constituting a taking...." *Creppel v. United States,* 30 Fed.Cl. 323 (1994), *appeal docketed,* No. 94–5070 (Fed. Cir. Feb. 15, 1994).

 In its motion for summary judgment, defendant argues that, according to plaintiff's complaint, the liability of the United States was fixed in 1980 and 1981 when Florida Rock's permit application for an adjacent

parcel of land was denied. As a result plaintiff's claim is time barred. Plaintiff responds that the *Florida Rock* decision had no effect on his property and denies that he has asserted that the Corps' denial of the application submitted by Florida Rock affected the accrual date of his claim. Accordingly to plaintiff, because no final decision was issued by the Corps on his 1979 permit application and this permit was withdrawn before any such decision, the claim did not accrue until plaintiff's second permit application was denied in 1993. Defendant replies that plaintiff did allege that the Corps' action with respect to Florida Rock had a binding effect on plaintiff. The *Florida Rock* decision thus caused the claim to accrue in 1980 or 1981.

A close analysis of the complaint does not support defendant's argument. At most, plaintiff asserts in his complaint that he hoped that the Government would consider itself bound by the outcome of the *Florida Rock* litigation for settlement purposes. *See* Compl. ¶ 14.[5] It is not evident that plaintiff is basing his claim on any Corps action other than the 1993 denial of his permit application. Plaintiff's response to defendant's motion confirms this interpretation. Defendant seeks to bar a claim that is not being asserted.

### 3. Ripeness of plaintiff's claim under the second permit application

█ The ripeness doctrine is based on the need to prevent courts "from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). A claim for a taking is not ripe for adjudication "until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 191, 105

S.Ct. 3108, 3119, 87 L.Ed.2d 126 (1985). Under the permitting provisions of the Clean Water Act, the impact of this requirement is that "[o]nly when a permit is denied and the effect of the denial is to prevent 'economically viable' use of the land in question can it be said that a taking has occurred." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985).

Defendant contends that because plaintiff's application did not include state certifications required for a section 404 permit, the application was incomplete, thus rendering the Corps' denial inconclusive for takings purposes. Since the denial was not a final decision affecting the economically viable use of plaintiff's property, defendant characterizes plaintiff's takings claim as not ripe for adjudication. In addition, since plaintiff's permit application lacked state certifications required by the Clean Water Act, the Corps had no authority to make a determination on the merits of the application. Even if the Corps had issued a final determination, defendant argues that it is not liable for this act since the act would be unauthorized.

Citing *Ciampetti v. United States*, 18 Cl. Ct. 548 (1989), plaintiff responds that, for takings purposes, the Corps is the final authority under section 404 and is not limited by state approval. The claim therefore became ripe for adjudication following the March 1993 permit denial. Plaintiff asserts that the state determinations were only a secondary rationale for the Corps' denial. The denial was actually based on the Corps' finding that the denial was required by the Corps' own guidelines. Further, letters from the Corps, the EPA, and other agencies contained in the administrative record demonstrate that denial of plaintiff's permit application was a certainty.

In its reply defendant distinguishes *Ciampetti*, claiming that the Corps' denial in that case was based on the merits of the application. In contrast, the denial of plaintiff's

---

**5.** Plaintiff explains that he withdrew his first permit application to await the outcome of the *Florida Rock* litigation, expecting that this determination would "serve to determine 'permit issues' and/or 'taking issues' concerning Plaintiffs' property, the Plaintiffs, and The United States...." Compl. ¶ 12.

application was based on a "lack of information." Def's Br. filed Feb. 9, 1994, at 12. Plaintiff therefore has never obtained a final decision on the permit application. Defendant also notes that, while the administrative record may document other agencies' opposition to issuance of the permit, the Corps is not bound by positions of other agencies and such opinions are not equivalent to a decision on the merits.

The Corps' March 8, 1993 denial letter states that plaintiff's application was evaluated under the Corps' section 404(b)(1) Guidelines. After analysis of the "sequential criteria of avoidance, minimization, and mitigation of the wetlands impact," the letter concluded that "[t]hese criteria have not been satisfied...." The basis of the denial was stated, as follows:

> Based on the evaluation of all pertinent facts in the file, we have determined that the project, as proposed, may not be the least environmentally damaging practicable alternative. For this reason, the permit is hereby denied without prejudice....

The language of the letter expresses unequivocally that the permit was denied because of the effect that the project would have on the wetlands, not because the application was incomplete. The fact that the application was denied without prejudice does not affect the finality of the decision. Plaintiff was allowed the option to refile because his application did not contain required state certifications. Since the absence of state certifications did not form the basis of the denial, however, another application containing these certifications [6] would not have changed the basis of the Corps' decision.

The authorities cited by defendant do not command a contrary conclusion. These cases all involve the application of land use ordinances. Although one particular (usually very intensive) use was denied, the possibility existed that other uses would be acceptable to the regulating authority.[7] *See Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65

L.Ed.2d 106 (1980) (holding that claim unripe since ordinance restricting development on appellant's land to single family residences was not facially invalid and appellant had not submitted plan for development); *Williamson,* 473 U.S. 172, 105 S.Ct. 3108 (holding that failure to seek variances that would allow proposed development rendered claim unripe). In the case at bar, it is evident that the Corps will not approve any permit that does not retain the property in its original wetland state. Based on the terms of the Corps' permit denial letter, no possibility remains that other types of development would be allowed. Seeking any further permits or applying for other types of development would be futile. Plaintiff is not required to pursue futile means to obtain a final determination. *See MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350 n. 7, 106 S.Ct. 2561, 2567 n. 7, 91 L.Ed.2d 285 (1985).

### 4. *Extent of the land subject to a takings claim*

■ Defendant requests a determination that plaintiff has only stated a claim for the taking of 190 acres. Citing *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893, 904–905 (Fed.Cir.1986) ("*Florida Rock I*"), *on remand,* 21 Cl.Ct. 161 (1990), *rev'd & remanded,* 18 F.3d 1560 (Fed.Cir.1994), defendant argues that since plaintiff applied for a permit to fill only 190 acres of its property, it cannot claim that the denial effected a taking of all 1,243 acres. The *Florida Rock I* court based its conclusion, however, on the finding that the Corps had considered only 98 acres in the application. 791 F.2d at 904. In this case the Corps' denial letter does not provide a basis for a similar finding on summary judgment. The letter describes the scope of the application as "95 acres of jurisdictional wetlands in conjunction with limestone mining on 655 acres, also in jurisdictional wetlands. The site of the proposed work is a 1,200–acre parcel...." Later on, the letter observes that the project "would

---

6. The state agency documents contained in the administrative record make clear that it was highly unlikely that plaintiff would have obtained such state approval.

7. Defendant also claims support in *Riverside Bayview Homes,* 474 U.S. 121, 106 S.Ct. 455. In that case, however, the claimant did not even seek a permit. Plaintiff here has applied for a permit, which has been denied.

result in the elimination of 655 acres of wetlands." At best, these statements render the amount of land considered by the Corps unclear. Summary judgment on this point in favor of defendant is therefore inappropriate. Determining the scope of plaintiff's takings claim is better reserved for trial. *Yuba Goldfields,* 723 F.2d at 887.

### CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is denied. A scheduling order has been entered separately.

**IT IS SO ORDERED.**