Howard W. **HECK and Associates, Inc.**, a New Jersey corporation, **Plaintiff**,

v.

The **UNITED STATES**, Defendant.

No. 95–275L.

United States Court of Federal Claims.

Feb. 6, 1997.

existence of such mortgages.

Kevin J. Coakley and Tricia Bevelock O'Reilly, Connell, Foley & Geiser, Roseland, NJ, for plaintiff.

Thomas J. Halkowski, with whom were Assistant Attorney General Lois Schiffer, Deputy Chief James E. Brookshire, Department of Justice, Washington, DC, for defendant.

## OPINION

WIESE, Judge.

### Introduction

Plaintiff Howard Heck and Associates, Inc. has brought this Fifth Amendment takings claim against the United States Government stemming from its thus-far unsuccessful application to the Army Corps of Engineers for a permit to develop protected wetlands. The Government, as one of its defenses, alleges that plaintiff's takings claim is not ripe, and thus that this suit is not within the court's jurisdiction.

The case is now before the court on plaintiff's motion to strike defendant's ripeness defense, and on defendant's motion to dismiss the complaint for lack of jurisdiction. The parties have filed written briefs in support of their respective positions and oral argument on the matter was heard on January 28, 1997. At the conclusion of the argument, the court issued a bench ruling in defendant's favor and explained that a formal, written decision would follow. This opinion fulfills that purpose. Based on the reasons developed in this opinion, the court holds that plaintiff's claim is not ripe for adjudication and, therefore, must be dismissed.

### Factual History

Plaintiff Howard Heck and Associates, Inc. owns an undeveloped 24–acre parcel of land in Monmouth County, New Jersey ("the Property"). On May 27, 1986, plaintiff obtained approval from the Farmingdale Borough Planning Board to permit development of the Property into a 45–lot housing subdivision to be known as "Brookside IV." In order to develop the subdivision, plaintiff needed to introduce clean fill and to grade the property. Nearly 21 of the Property's 24 acres consist of federally regulated waters and wetlands, and just over 13 of these acres would have to be filled as part of the proposed development.

Before proceeding with the development, plaintiff was required to obtain a permit for the discharge of dredged and fill material into the wetlands from the Army Corps of Engineers ("the Corps") pursuant to section 404 of the Clean Water Act, 33 U.S.C.A. § 1344 (West 1986).[1] The Corps' granting of the section 404 permit was conditioned, under section 401 of the Act, 33 U.S.C.A. § 1341 (West 1986), upon plaintiff first obtaining a Water Quality Certificate ("WQC") from the state in which the discharge would originate—in this case, approval was needed from the New Jersey Department of Environmental Protection ("NJDEP").[2]

### The WQC Application

On January 3, 1989, plaintiff submitted its application to NJDEP for a WQC. By letter dated February 16, 1989, NJDEP indicated that, before the application could be reviewed, the State Bureau of Freshwater Wetlands needed to determine whether or not "Brookside IV" was exempt from the Freshwater Wetlands Protection Act ("Wetlands Act"). NJDEP also indicated that plaintiff would be required to supplement the application with additional information, including a "complete discussion of alternatives."

Plaintiff provided information addressing several of NJDEP's concerns in its October 1989 response to the Agency. Most pertinent to the issue now before the court was its discussion of alternatives, as requested by the Agency. On this point, plaintiff's response, in full, was as follows:

Item number 4 of your letter requests a complete discussion of alternatives. In this regard, please be advised that the

---

1. Section 404(b)(1) provides only that permits shall be granted for discharge into navigable waters (including wetlands) "based upon criteria comparable" to those criteria used for granting permits to dispose of material into territorial seas, the contiguous zone, and the ocean. 33 U.S.C.A. § 1344(b)(1).

2. Section 401(a)(1) provides that "[a]ny applicant for a Federal license or permit to conduct any activity ... which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates ... that any such discharge will comply with the applicable provisions of sections 1311, 1312, 1313, 1316, and 1317 of this title." 33 U.S.C.A. § 1341(a)(1).

property is zoned for the intended use by the Borough of Farmingdale the developer [sic] has invested a considerable amount of time and effort in gaining approvals on this site which is an extension of adjacent similar residential development also owned by the applicant. In addition, the property could not physically be developed without removal of vegetation, grading and fill for proper drainage purposes. Accordingly, there is no other alternative to the approved residential project, other than to allow the land to remain idle and vacant. Defendant's App. at 10. NJDEP, in December 1989, notified plaintiff that the Agency's request for additional information "was not sufficiently responded to," and that the alternatives analysis, in particular, was lacking:

Item number 5 of your letter did not adequately address alternatives to this project. Alternatives are to include both on and off-site considerations. On-site alternatives would include minimizing water quality impact through the minimization of discharge and fill, and/or total avoidance of wetland impact. The consideration of off-site alternatives must also be demonstrated. The Division does not consider ownership of a particular property as reason to reject alternative sites. A complete alternatives analysis must be submitted prior to further review of this application.

Defendant's App. at 11.

At this point, plaintiff stopped substantively responding to NJDEP's requests for additional information, and instead began to challenge the Agency's legal basis for making the requests in the first place. In a letter dated July 31, 1990, counsel for plaintiff informed NJDEP that, because plaintiff's application had been filed 18 months previously, the WQC requirement should be presumed waived. This argument was based on section 401 of the Clean Water Act, which presumes a waiver when a state does not act upon a WQC application within one year. *See* 33 U.S.C.A. § 1341(a)(1) (West 1986). In addition to the claimed waiver, plaintiff further argued that "there is no basis in law for the Department to require a consideration of alternatives in reviewing a water quality certificate" in light of the fact that "the project in question is exempt from the New Jersey Freshwater Wetlands Act."[3] Defendant's App. at 13–14.

Two weeks later, NJDEP responded to plaintiff's contentions by reiterating that plaintiff's application remained deficient. While not specifically addressing the one-year waiver presumption, the Agency pointed out that its requirement of an alternatives analysis for WQC applications was based on the federal 404(b)(1) guidelines, not the state Wetlands Act. In October 1990, counsel for plaintiff again wrote to NJDEP, this time invoking a recent state court decision— *N.A.I.O.P. v. New Jersey Dep't of Environmental Protec.*, 241 N.J.Super. 145, 574 A.2d 514, 519 (App.Div.1990)—which held, according to plaintiff, that the Wetlands Act offered the only statutory authority for administering wetlands protection in New Jersey. Relying on this understanding of the court's decision, plaintiff wrote that "there is no basis whatsoever for the Department to continue to utilize wetland protection as a means to measure issuance of a Water Quality Certificate." "Thus," plaintiff concluded, "the lack of relevance of the numerous requests for information made to the applicant is clear." Defendant's App. at 16.

Over two years later, in November 1992, NJDEP rejected plaintiff's legal attack, reasoning that "[w]etlands are part of the waters of the United States and are therefore subject to the Clean Water Act antidegradation goals and objectives." Defendant's App. at 17. As such, the Agency continued to utilize the 404(b)(1) guidelines, including the alternatives analysis requirement. NJDEP informed plaintiff that if the requested information was not submitted within 30 days, the

---

**3.** Plaintiff was notified on May 15, 1991, that based on the date of the borough planning board's approval of the proposed subdivision, it was exempt "from the requirement of obtaining a NJDEP Freshwater Wetlands or Open Water Fill permit." Plaintiff's App. at 26. In March 1994, however, the State of New Jersey assumed the federal permitting authority under section 404 of the Clean Water Act through the enactment of its own comprehensive wetland permitting program. At that time, plaintiff's exemption from the Wetlands Act became null and void by operation of law.

application would be canceled. On December 16, 1992, after not receiving the requested information, NJDEP canceled plaintiff's WQC application.

*The Section 404 Permit Application*

Meanwhile, plaintiff had proceeded with the section 404 permit process, submitting its application and supporting documentation to the Corps on April 5, 1991. The Corps requested additional information and documentation in May 1991, and plaintiff provided it on July 9, 1991. Not having received a response, plaintiff followed up on August 27, 1991, asking to be advised "when this project will go out for Public Notice and when a decision may be expected in this matter." Plaintiff's App. at 61. Still without a response, on February 13, 1992, counsel for plaintiff advised the Corps that the failure to send the application out for public notice by this point was "in direct contravention" of the 60-day target time period for review prescribed by 33 C.F.R. § 325.2. Plaintiff's App. at 62.

The Corps responded on March 5, 1992, by explaining that the delay stemmed from the need to verify the Property's wetland boundary. The Corps stated that the verification of the boundary would be completed within six weeks of receiving certain previously requested information from plaintiff, but that the application would be withdrawn without prejudice if the information was not received within 30 days of the date of the letter. After another exchange of letters and the provision of additional information by plaintiff, the Corps notified plaintiff on October 19, 1992 that the application had been sent out for public notice and reminded plaintiff of its "responsibility to obtain State approval and water quality certification from [NJDEP]." Plaintiff's App. at 77. In response to the public notice, the Corps received comments from the Environmental Protection Agency and the Department of the Interior, both of which were of the opinion that plaintiff's proposed development would violate the guidelines of section 404(b)(1) of the Clean Water Act.

In a letter to the Corps dated November 23, 1992, counsel for plaintiff argued that, because NJDEP had failed to act upon plaintiff's application within one year, "the Army Corps of Engineers shall deem the water quality certification requirements waived by the State." He also insisted that NJDEP's informational demands made under the section 404(b)(1) guidelines had "absolutely no basis" given the Property's exemption from the Wetlands Act, and requested that the Corps issue the section 404 permit "expeditiously." Plaintiff's App. at 85.

As noted above, NJDEP canceled plaintiff's WQC application on December 16, 1992. Subsequently, by letter dated January 8, 1993, the Corps notified plaintiff that the section 404 application was being withdrawn from active status. The stated reason for the withdrawal was that, because NJDEP had determined plaintiff's WQC application to be deficient and therefore had canceled it, the Corps, in turn, could not regard the WQC requirement as waived. Accordingly, plaintiff was advised that its section 404 permit application would "be held in abeyance until such time as [plaintiff has] received the necessary state permits for the work." Plaintiff's App. at 87.

*The Current Litigation*

On April 5, 1995, plaintiff filed a complaint in this court alleging that the Corps' withdrawal of plaintiff's section 404 permit application constituted a taking of private property under the Fifth Amendment. Defendant, in its answer, denied the substance of plaintiff's claims, and further asserted that the action was not ripe because the Corps had not determined the extent to which plaintiff would be allowed to place fill on the Property. Plaintiff has moved to strike defendant's ripeness defense, and defendant has moved to dismiss the complaint for lack of jurisdiction.

In its motion to dismiss, defendant argues that plaintiff's claim is not ripe for adjudication because "no substantive decision has been made regarding the extent to which wetlands at the subject site may be developed." Defendant asserts that the Corps' withdrawal of plaintiff's application stemmed from plaintiff's "lack of cooperation" in the state WQC application process, and as such cannot be attributed to the Government as a

substantive denial of the application. According to defendant, "plaintiff's unwillingness to provide information repeatedly requested by the State of New Jersey must be found instead to render the dispute not ripe for adjudication at this time." Defendant seeks a dismissal pursuant to Rule 12(h)(3) of the Rules of the Court of Federal Claims.

Plaintiff responds by pointing out that ripeness does not always require a decision on the merits, and argues that the "factual record in this case demonstrates that the 'finality' requirement has been satisfied." Highlighting the federal regulatory framework in which plaintiff's failed WQC application arose, plaintiff portrays the WQC as "a requirement of federal law the denial of which is attributable to the federal government" for purposes of establishing a takings claim.

Plaintiff also seeks to overcome defendant's ripeness arguments by questioning the legitimacy of the Corps' withdrawal of plaintiff's section 404 application. First, plaintiff argues that the Corps was required to consider the WQC waived because NJDEP had failed to act upon plaintiff's application within one year, and thus the cancellation of the WQC application could not serve as the reason for the Corps' withdrawal. Second, plaintiff argues that, because NJDEP based its cancellation of the WQC application on plaintiff's failure to comply with a legally unjustified information request, a withdrawal by the Corps based on that cancellation was "inappropriate." As a practical matter, plaintiff argues that "the Government's ripeness defense, if upheld, would sanction the whipsawing of Fifth Amendment plaintiffs from court to court, requiring that both public and private resources be wasted on futile and pointless litigation in order to 'ripen' a case for federal court review."

## Discussion

A claim that the application of government regulations constitutes a taking of private property is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,*

473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). While takings cases are "essentially ad hoc, factual inquiries," courts "have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action—that have particular significance" in the court's determination. *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390–91, 62 L.Ed.2d 332 (1979). These factors "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County,* 473 U.S. at 191, 105 S.Ct. at 3119.

In this case, the Army Corps of Engineers did not reach a "final, definitive position" as to how it would apply section 404(b)(1) of the Clean Water Act to plaintiff's proposed development. Rather, the Corps withdrew plaintiff's application before substantively addressing its merits because plaintiff had failed to obtain a state WQC—one of the prerequisites to the grant of a section 404 permit. As such, unless plaintiff can show why the Government need not have issued a definitive evaluation regarding plaintiff's proposed development in order for the court to consider its takings claim ripe, then defendant's motion to dismiss must be granted.

### The Finality of the Corps' Determination

In its initial effort to overcome the absence of a substantive determination by the Corps, plaintiff emphasizes that the ripeness determination is a fact-intensive analysis that requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration," *Abbott Labs v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), *abrogated on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Plaintiff insists that defendant's position—requiring that a "definitive evaluation" of a government program's impact be obtained from an agency before a takings claim can be heard—would entail that only a decision on the merits could meet the ripeness requirement. "To accept such a

proposition," plaintiff argues, "would mean that no 'without prejudice' denial could ever be a taking and an agency would always have a way to side-step Fifth Amendment liability."

The primary case which plaintiff cites for support of the proposition that regulatory takings claims can ripen without a decision on the merits being reached is *City Nat'l Bank of Miami v. United States*, 30 Fed.Cl. 715 (1994). In that case, the plaintiff's section 404 application was denied without prejudice by the Corps. The Government argued that, because the plaintiff's application had not included the required state certifications, the application was incomplete and thus the Corps' denial of it was inconclusive for takings purposes. The court rejected this argument and held that the takings claim was ripe because the language of the Corps' denial "expresses unequivocally that the permit was denied because of the effect that the project would have on the wetlands, not because the application was incomplete." *Id.* at 720. The fact that the denial was made without prejudice did not affect its finality: "Since the absence of state certifications did not form the basis of the denial ... another application containing these certifications would not have changed the basis of the Corps' decision." *Id.*

Judging from the reasoning underlying the court's decision in *City National Bank*, the finding of ripeness there does not dictate a similar finding in the case at hand. The *City National Bank* court emphasized the degree to which the Corps had addressed the substance of the plaintiff's permit application, as reflected in the administrative record. "Based on the evaluation of all pertinent facts in the file," the Corps had concluded, "we have determined that the project, as proposed, may not be the least environmentally damaging practicable alternative." *Id.*

This is a far cry from the record before the court in this case, in which the Corps notified plaintiff that "no waiver of Water Quality Certification has occurred and further processing of your application will be held in abeyance until such time as you have received the necessary state permits for the work." Plaintiff's App. at 87.

Plaintiff protests that this withdrawal by the Corps, while appearing to be based on procedural shortcomings, masks what was, in effect, a substantive agency disposition, and that the Corps' reliance on the lack of a WQC was a "sham." This conclusion is based on plaintiff's assertions that the Corps' issuance of public notice signified the completeness of plaintiff's application, and further that, if the lack of a WQC was the only basis for the withdrawal, the Corps would have issued a section 404 permit conditioned on plaintiff obtaining a WQC. Neither of plaintiff's assertions hold up to close scrutiny. When read in its entirety, the applicable regulation—which plaintiff quotes selectively—instructs that the issuance of public notice is not to be delayed even though not all information necessary to evaluate an application has been obtained by the Government. *See* 33 C.F.R. § 325.1(d)(9). And it is unclear how the fact that the Corps may have had discretion to issue a conditional permit under section 404 means that the Agency's failure to do so indicates hidden reasons for its withdrawal decision.[4] Plaintiff has failed to show any reason why the court should interpret the Corps' withdrawal of plaintiff's application as a decision based on the proposed development's merits. Under the reasoning of *City National Bank*, a denial based entirely on an application's incompleteness, as this withdrawal appears to have been, is not entitled to any presumption of finality in a ripeness determination.[5]

---

4. As explained in the discussion on plaintiff's allegations of agency improprieties, *infra*, even if the Corps was required to issue a conditional permit under these circumstances, this court would not have jurisdiction to address the propriety of the Agency's decision not to do so.

5. This is not to say that an agency's denial of a land-use application without addressing its merits can never give rise to a ripe takings claim.

The court is not presently faced with the task of defining the precise circumstances under which such an event could transpire, and endeavoring to do so here would be inappropriate, as well as unnecessary. All that needs to be noted is that those circumstances are clearly not present where, as here, the Agency's only stated reason for denial was plaintiff's failure to meet the application's procedural requirements.

### The Futility Argument

■ Plaintiff next argues that its claim should be found ripe despite the lack of a substantive agency determination because "regardless of the failure to obtain the required state certification, denial of the section 404 permit at the Corps level was a certainty." This argument is based on the legal principle that plaintiffs are "not required to pursue futile means to obtain a final determination." *City National Bank,* 30 Fed.Cl. at 720 (citing *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350 n. 7, 106 S.Ct. 2561, 2567 n. 7, 91 L.Ed.2d 285 (1985)). While plaintiff correctly states the legal principle, its attempt to apply this "futility" doctrine to the facts at hand is misguided. Plaintiff first emphasizes the dim prospects of approval faced by its section 404 application in light of the fact that plaintiff's proposed development is "not water dependent." For such developments, according to one article cited by plaintiff, the alternatives analysis required by section 404 poses a "particularly difficult hurdle for the applicant." William McGreevey, *A Public Availability Approach to Section 404(b)(1) Alternatives Analysis: A Practical Definition for Practicable Alternatives,* 59 Geo. Wash.L.Rev. 379, 386 (1991).

As additional evidence of the "futility" of its section 404 application, plaintiff points to the negative responses elicited from two federal agencies when the Corps sent plaintiff's application out for public notice. Because "the project as it is currently proposed may have substantial and unacceptable impacts to [sic] an aquatic resource of national importance," the Environmental Protection Agency recommended that the Corps deny the section 404 permit. Plaintiff's App. at 90. Similarly, the Department of the Interior recommended a denial based on plaintiff's failure "to avoid and minimize adverse impacts to the extent required by the [section 404 guidelines]." Plaintiff's App. at 95. Plaintiff would argue that these agency findings invariably would weigh heavily in the Corps' determination of whether or not to grant plaintiff a permit.

What plaintiff's argument fails to acknowledge is that a difficult position does not necessarily equal a futile position. Even assuming that section 404's presumptions against developments that are "not water dependent" significantly lessened the likelihood that plaintiff would secure a permit, such a showing would still not give rise to a legitimate futility claim. Neither would the issuance of negative recommendations from other federal agencies. According to the sworn testimony of the Chief of the Corps' Regulatory Branch, "[t]he Corps may issue a permit despite negative comments by another agency, and we have, in fact, done so on other occasions." Defendant's Supp.App. at 50. Thus, the mere existence of the negative comments does not render the entire application process "futile."

■ The success of the futility argument in *City National Bank* hinged on the court's finding that "it is evident that the Corps will not approve any permit that does not retain the property in its original wetland state. . . . no possibility remains that other types of development would be allowed." *City National Bank,* 30 Fed.Cl. at 720. There has been no such showing of impossibility in this case; even if plaintiff showed an objective probability of denial on the merits—which it has not—the application process could not thereby be characterized as "futile." A plaintiff cannot plead futility whenever faced with long odds or demanding procedural requirements. Administrative obstacles to the securing of a permit—such as negative agency comments or statutory presumptions—do not automatically exonerate a plaintiff from all responsibility to see the application process through to its end.

### The Imputation of State Action to the Federal Government

■ Plaintiff next seeks to enlarge the focus of the court's analysis to encompass not only the Corps' withdrawal of the section 404 application, but also NJDEP's cancellation of plaintiff's WQC application. Asserting that New Jersey's WQC process "was mandated by federal law, was established as a means to satisfy federal law requirements and was reviewed by NJDEP pursuant to federal guidelines," plaintiff argues that "NJDEP's refusal to issue a WQC is ultimately the responsibili-

ty of the [Federal] Government." As such, plaintiff concludes, "the fact that actions of the State have presented the obstacle on which the section 404 permit was denied does not render plaintiff's claim unripe."

Whether or not plaintiff's attempt to impute the actions of NJDEP to the Federal Government is legally valid, increasing the scope of the court's inquiry in this manner does not appear to affect the outcome of that inquiry. Adding NJDEP's cancellation of plaintiff's WQC application to the takings analysis does not in itself transform a previously unripe takings claim into a ripe one. There is no indication that NJDEP undertook a significantly more substantive evaluation of plaintiff's WQC application than did the Corps with respect to the section 404 application. The reason for canceling the application was explained to plaintiff in a letter from NJDEP:

> [T]he Program determined that your application was deficient with regard to a consideration of alternatives to the proposed activities.... the Program advised you by letter that your application would be canceled if the application deficiency was not remedied within 30 days. The Program has not received this requested information as of this writing. Accordingly, your application is hereby canceled effective today.

Plaintiff's App. at 86. For finality purposes, the "application deficiency" at the root of plaintiff's WQC cancellation appears to be of the same nature as the lack of state certification that was the basis of the Corps' section 404 withdrawal. In neither instance did the Agency arrive at anything close to "a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County*, 473 U.S. at 191, 105 S.Ct. at 3119. Even if the court assumes that the actions of NJDEP are attributable to the Federal Government for takings purposes, plaintiff is merely left with

two agencies, instead of one, that failed to substantively evaluate plaintiff's land-use applications because of their incompleteness.

### The Propriety of the Agencies' Actions

■ Even if NJDEP and the Corps never substantively addressed plaintiff's applications, plaintiff argues, illegitimate reasons underlying the agencies' denials preclude defendant from succeeding in its ripeness argument. The Corps' withdrawal of the section 404 application, plaintiff asserts, was "unilateral and unnecessary" for two reasons. First, plaintiff argues that, because NJDEP failed to act on the WQC application within one year, the Corps was required to deem the state certification requirement waived under section 401 of the Clean Water Act, 33 U.S.C.A. § 1341(a)(1) (West 1986). Second, plaintiff argues that NJDEP's WQC cancellation was an inappropriate basis for the Corps' withdrawal because NJDEP's demands for an alternatives analysis from plaintiff violated state law, as established by *N.A.I.O.P. v. New Jersey Dep't of Environmental Protec.*, 241 N.J.Super. 145, 574 A.2d 514, 519 (App.Div.1990).

Again, plaintiff's argument consists of potentially valid propositions that have no effect on the court's ripeness analysis. For the sake of this inquiry, the court can assume that the Corps was required to deem plaintiff's state certification requirement waived due to the statutory one-year time limit,[6] and that NJDEP's demand for an alternatives analysis ran counter to state law. However, plaintiff has made no showing of how the impropriety of underlying agency action serves to ripen its takings claim when such improprieties are not redressable within the court's general takings jurisdiction.

■ The essence of plaintiff's argument is that NJDEP violated state law in demanding an alternatives analysis from plaintiff, and that the Corps violated federal law in not

---

**6.** This assertion is far from a given, however. The statute provides that if the state "fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal

application." 33 U.S.C.A. § 1341(a)(1) (West 1986). The regulation that implements this waiver authority, 33 C.F.R. § 325.2(b)(1)(ii) (1996), makes clear that the commencement of a waiver period is tied to the certifying agency's receipt of a valid request for certification.

deeming the state certification requirement waived. These assertions, taken on their face, lead to obvious trouble for plaintiff because "[t]he Tucker Act suit in the Claims Court is not ... available to recover damages for unauthorized acts of government officials." *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893, 898 (Fed.Cir. 1986) (citing *Armijo v. United States,* 663 F.2d 90, 229 Ct.Cl. 34 (1981); *NBH Land Co. v. United States,* 576 F.2d 317, 217 Ct.Cl. 41 (1978)). In *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796 (Fed.Cir.1993), the plaintiff brought a takings claim after the Corps issued a cease and desist order to stop the plaintiff from filling wetlands without a section 404 permit. The plaintiff sought to bolster its claim by arguing that the Corps had improperly invoked its jurisdiction over the land in question. The court rejected this argument, holding that a mistake in the Corps' permit process "may give rise to a due process claim, not a taking claim." *Id.* at 803. This result derived from the principle that the "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act." *Id.; see also B & F Trawlers, Inc. v. United States,* 27 Fed.Cl. 299, 303 (1992) ("An assertion that the Government's action is unlawful is insufficient to allege a taking in this court because '[c]hallenges to the propriety of government action sound in tort.'" (quoting *Montego Bay Imports, Ltd. v. United States,* 10 Cl.Ct. 806, 809 (1986))); *Armijo,* 663 F.2d at 95 (holding that if "the taking is unauthorized, the acts of defendant's officers may be enjoinable, but they do not constitute taking effective to vest some kind of title in the government and entitlement to just compensation in the owner").

Plaintiff attempts to escape the ramifications of its argument by asserting that it "has not contended that the action by the Corps was in any way 'unlawful,'" and that it "has never questioned that the government acted within its statutory powers." "In fact," plaintiff insists, "based upon its regulations, issuance of a section 404 permit to Heck would likely have been unlawful." Plaintiff argues that its discussion of the background statutes and regulations merely "is intended to demonstrate that although termed a 'with-

drawal,' the Corps' action on Heck's application is tantamount to a 'final' decision."

Plaintiff's subsequent protestations notwithstanding, the language of plaintiff's argument on agency improprieties speaks for itself:

> On several occasions, ... Heck advised the Corps in writing of the State's failure to act on the application for WQC within the one year time frame and that consequently, the Corps was required to deem the requirement waived. Despite the statutory and regulatory mandate, the Corps did not hold the State to the one year deadline. Since the Corps elected to ignore the mandate of 33 U.S.C. section 1341(a)(1), it should not be permitted to avoid liability based upon Heck's failure to obtain WQC.

Plaintiff's Br. at 22–23. The nature of plaintiff's objections to NJDEP's application requirements is similarly clear:

> [T]he basis on which the NJDEP denied Heck's application contravenes state law.... The demand for an alternatives analysis by the State ... ignores the fact that Heck's proposed Project was exempt from the New Jersey Freshwater Wetlands Protection Act and thus, pursuant to State law, the NJDEP was prohibited from applying any wetlands criteria in its evaluation of the WQC application.

Plaintiff's Br. at 23. Plaintiff alleges, in effect, that the Corps acted beyond its authority by ignoring section 1341's one-year waiver requirement, and that NJDEP acted beyond its authority by requiring an alternatives analysis from plaintiff. These allegations fall well within the scope of unauthorized agency action which *Florida Rock Industries* and progeny have clearly established as outside this court's takings jurisdiction. *See, e.g., Marrero Land & Improvement Ass'n. Ltd. v. United States,* 26 Cl.Ct. 193, 197 (1992) (holding that court was without jurisdiction to hear takings claim against EPA because "[p]laintiffs, in asking the court to find that the EPA action was arbitrary, capricious, and unreasonable, are asking the court to find that EPA did not exert a rightful regulatory right").

The fact that this court's takings jurisdiction does not encompass the allegations made against the Corps and NJDEP[7] does not leave plaintiff without recourse when faced with what it considers to be unauthorized and illegitimate agency action. In *Florida Rock Industries*, 791 F.2d at 895, the plaintiff brought a takings claim after the Corps issued a cease and desist order against the plaintiff's mining activity, then denied plaintiff's application for a section 404 permit that would have allowed it to resume mining. The Corps asserted jurisdiction over the land pursuant to the Clean Water Act, 33 U.S.C.A. § 1362(6) (West 1986), based on its opinion that the mining process would produce temporary "pollution" into the wetlands. In the course of ruling that a taking had occurred, the Claims Court found that the proposed mining would not pollute. *See id.* at 898. As the Federal Circuit noted on appeal, the premise that the mining would cause pollution was "the sole basis in law for the Army engineers taking action" against plaintiff's land use. *Id.* And this finding meant, in effect, that the trial court had assumed the right to review the Corps' exercise of its regulatory authority.

In vacating and remanding, the Court of Appeals ruled that it was erroneous for the trial court to even undertake the inquiry of whether or not the mining activity would pollute. Moreover, the trial court's finding that the mining would not pollute did not support the compensation award that the trial court granted; rather, "[i]t would support either a dismissal of the complaint or a transfer of the case to a court having APA jurisdiction." *Id.* at 899. This is because of the "indisputable" principle that "the proper way to challenge the decision to grant or withhold the [section 404] permit would be under the Administrative Procedure Act." *Id.* at 898.

If plaintiff believed that the Corps overreached its regulatory authority in its handling of the section 404 application, plaintiff could have brought suit in federal district court. If plaintiff wanted to challenge NJDEP's demand for an alternatives analysis, it could have challenged the Agency in New Jersey state court. Success in either forum would have led plaintiff to a much different procedural stance than the one in which it presently finds itself. If a court had prohibited NJDEP from demanding an alternatives analysis, or mandated that the Corps waive the WQC requirement, plaintiff would now likely have either a section 404 permit, or else a ripe takings claim.[8]

Even if plaintiff were to acknowledge the jurisdictional ramifications of its claims regarding agency improprieties and concede the lawfulness of the Corps' and NJDEP's actions, it would be in no better position. If NJDEP acted within its discretion in demanding an alternatives analysis from plaintiff, and if the Corps properly deferred to NJDEP in not waiving the WQC requirement, then plaintiff has no basis for a takings claim. Because plaintiff could challenge neither the agencies' procedural requirements (not within this court's jurisdiction) nor substantive determinations (neither Agency reached one), plaintiff would essentially be left to base its takings claim on the agencies' assertion of regulatory authority over plaintiff's proposed development. However, the Supreme Court has "made it quite clear that the mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985).

---

**7.** The court's discussion has assumed, without so holding, that the actions of NJDEP in administering the WQC program are attributable to the Federal Government for takings purposes.

**8.** Plaintiff's objection that a dismissal based on ripeness "would sanction the whipsawing of Fifth Amendment plaintiffs from court to court, requiring that both public and private resources be wasted on futile and pointless litigation in order to 'ripen' a case for federal court review"

is misguided. The takings jurisdiction of this court cannot be unhinged from long-established limiting principles at the request of a plaintiff who foregoes other, clearly appropriate avenues of judicial remedy. Further, if plaintiff is primarily concerned with conserving the public and private resources expended through litigation, it simply could have complied, in the first place, with NJDEP's requests for a complete alternatives analysis.

The fatal weakness of plaintiff's claim remains the absence of any substantive determination by the Federal Government regarding its permit applications. However protracted the procedural wranglings between plaintiff and the agencies, the record shows that "[p]laintiff was not precluded from development; it was precluded from development without a permit." *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 801 (Fed.Cir.1993). Such preclusion does not give rise to a valid takings claim. *See id.*

### Conclusion

If either NJDEP or the Corps acted unlawfully regarding plaintiff's land-use applications, then plaintiff might have a valid cause of action—but not in this court. On the other hand, if plaintiff was without legal justification for its failure to comply with NJDEP's information requests, and if the Corps was not required to waive the WQC requirement, the court is left with a plaintiff who short-circuited the normal administrative processes by refusing to comply with legitimate procedural requirements, and who now seeks to recover for the "loss" of a piece of property about which no substantive agency determination has yet been made. Plaintiff's motion to strike defendant's ripeness defense is denied, and defendant's motion to dismiss the complaint for lack of jurisdiction is granted.[9] The Clerk is directed to enter judgment dismissing the complaint.

---

9. Case law instructs that, unless a claim is ripe, a court lacks jurisdiction to hear it. *See, e.g., St. Clair v. City of Chico,* 880 F.2d 199, 201, 204 (9th Cir.1989); *Austin v. City of Honolulu,* 840 F.2d 678, 682 (9th Cir.1988).